In re Kevin ADELL, Debtor.

No. 9:03–bk–23684–ALP.

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

Feb. 1, 2005.

Ralph E. McDowell, Bodman, Longley & Dahling, LLP, Detroit, MI, Asher Rabinowitz, Ruden McClosky, Dawn A. Carapella, Trenam, Kemker, Scharf, Barkin, et al., Roberta A. Colton, Tampa, FL, Barbara A. Hart, Ruden McClosky, St. Petersburg, FL, for Debtor.

T. Patrick Tinker, Office of the U.S. Trustee, Tampa, FL, for U.S. Trustee.

## *ORDER ON DEBTOR'S MOTION TO AVOID JUDICIAL LIEN*

### (Doc. No. 193)

ALEXANDER L. PASKAY, Bankruptcy Judge.

THE MATTER under consideration in this Chapter 11 case of Kevin Adell (the "Debtor") is a Motion to Avoid Judicial Lien pursuant to 11 U.S.C. § 522(f) filed by the Debtor. The judicial lien sought to be avoided is a judicial lien claimed by John Richards Homes Building Co., L.L.C. (JRH).

In order to highlight the key points relevant to the Motion under consideration as they appear from the record of this Chapter 11 case, including the record of the litigation between JRH and the Debtor in the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division (the "Michigan Bankruptcy Court"), it is appropriate to briefly recap the events preceding and leading up to the Motion to Avoid Judicial Lien.

On June 24, 2002, the Debtor filed an Involuntary Petition against JRH in the Michigan Bankruptcy Court.

On July 15, 2002, the Michigan Bankruptcy Court entered an Order and dismissed the Involuntary Petition. The Michigan Bankruptcy Court, in its Order of Dismissal, reserved jurisdiction for the consideration of any request for compensatory and punitive damages and for attorney fees. After the conclusion of an evidentiary hearing on the Motion for Sanctions filed by JRH, the Michigan Bankruptcy Court issued its Memorandum Opinion on April 25, 2003, (the "Sanctions Order").

In the Sanctions Order, the Michigan Bankruptcy Court determined that "John Richards Homes Building Co., L.L.C., shall recover from Kevin Adell compensatory damages in the amount of $4,100,000; punitive damages in the amount of $2,000,000; and attorney fees and costs in the amount of $313,230.68, plus interest at the statutory rate." The award was based on the Michigan Bankruptcy Court's determination that the Debtor, Kevin Adell, had filed an Involuntary Petition against John Richards Homes Building Co., L.L.C. in bad faith, and that sanctions for the bad faith filing were, therefore, warranted pursuant to 11 U.S.C. § 303(i) of the Bankruptcy Code.

The Debtor arrived in Naples, Florida, on May 5, 2003. On May 6, 2003, the Debtor engaged the services of a real estate broker to assist him in the purchase of a home. On May 7, 2003, the Debtor signed a contract to purchase the home located at 636 14th Avenue South, Naples, Florida 34102 (the "Homestead"). On May 8, 2003, two weeks after the entry of the Sanctions Order in Michigan, the Debtor purchased the home in Naples, Florida, for the approximate purchase amount of $2,800,000 and took legal title to the Homestead by Warranty Deed.

Following the purchase of his Homestead on May 8, 2003, the Debtor immediately took various steps to establish his residency in Naples, Florida. The Debtor registered to vote in Florida; he registered his automobile in Florida; he obtained a fishing license and also obtained a Florida driver's license. The Debtor opened and maintained several bank accounts in the State of Florida with the Community National Bank in Naples, Florida; Atlantic State Bank, Naples; and Huntington Bank, Naples, Florida. The Debtor closed all of these accounts postpetition and the funds were transferred to

the Debtor's debtor-in-possession account at Huntington Bank, Naples, Florida. The Debtor also developed a new business venture in the State of Florida and formed a Florida not-for-profit company. On August 23, 2003, the Cuban Cultural Heritage Alliance was notified by the Florida Department of Agriculture and Consumer Services that it had complied with the registration requirements of Chapter 496, Florida Statutes, the Solicitation and Contribution Act. The name Cubana One Network was registered as a fictitious name with the Florida Department of State on September 2, 2003. On October 27, 2003, the Debtor obtained a Florida marriage license and married his fiancée, Joelle Lukasiewicz at the Debtor's Homestead on December 20, 2003. Mrs. Adell had resigned from her position as a news reporter of WDIV in Detroit, Michigan, and permanently moved to Naples, Florida, on December 12, 2003. The Debtor listed his home in Michigan for sale with a broker, and the property was ultimately sold.

On May 12, 2003, the Michigan Bankruptcy Court entered the Order Granting JRH's Motion for Post–Judgment Relief, including an injunction prohibiting Kevin Adell from transferring assets (the "Post–Judgment Order"). In the Post–Judgment Order, the Michigan Bankruptcy Court prohibited the Debtor from (1) any type of transfer of any type of asset other than in the ordinary course of business, (2) depositing any assets with any off-shore institution, and (3) transferring any non-exempt property into exempt property.

On May 21, 2003, JRH filed a Motion for Miscellaneous Post–Judgment Relief and sought an order from the Michigan Bankruptcy Court to force a sale of the Naples, Florida, residence of the Debtor. The Debtor, who claimed that the home was Homestead and could not be reached by creditors of the homeowner, resisted the Motion. JRH also requested an order requiring the Debtor to turn over certain personal property to the U.S. Marshal. Additionally, JRH sought an order requiring the Michigan Secretary of State to record liens on several of the Debtor's vehicles.

On May 29, 2003, JRH recorded in the Official Records of Collier County, Florida, the Sanctions Order and Certification of Judgment for Registration in Another District issued by the Michigan Bankruptcy Court May 16, 2003. JRH's Certification of Judgment for Registration in Another District can be found in Document Nos. 3192622 at OR: 3302 PG: 2835 and 3192623 at OR: 3302 PG: 2859 in the Official Records of Collier County, Florida.

On July 3, 2003, JRH filed a Judgment Lien Certificate indicating Kevin Adell as the Judgment Debtor, with a mailing address of 636 14th Ave., S. Naples, Florida, 34102, with the Secretary of State, for the State of Florida. The State of Florida recorded the judgment lien filed on July 3, 2003, reflecting the Debtor, Kevin Adell, as the Judgment Debtor on lien document number J03000206245.

On August 29, 2003, JRH filed an Affidavit Regarding Judgment Creditor's Address, which was recorded for the first time in the Official Records of Collier County, Florida.

On September 17, 2003, the Michigan Bankruptcy Court entered an Order (the "Homestead Order") that the home the Debtor had purchased in Naples, Florida, did not qualify as homestead because (1) whatever homestead statutes are in Florida are trumped by Section 303(i) of the Code; and (2) the Debtor did not qualify for homestead because he was not a *bona fide* resident of Florida. The Michigan Bankruptcy Court ordered the Debtor to sell the Naples, Florida, home within 60 days and directed the Debtor to turn over

some other properties to the U.S. Marshal. The Debtor did not sell the Homestead but turned over a gold Rolex watch and gold money clip to the U.S. Marshal, which were sold.

The Debtor promptly appealed the Homestead Order and filed a Motion for Stay Pending Appeal. The Michigan Bankruptcy Court denied the Motion. On October 14, 2003, approximately one month after the Michigan Bankruptcy Court had rendered its decision, the Debtor filed an Emergency Motion for Stay Pending Appeal in the United States District Court, Eastern District of Michigan, Southern Division (the "District Court"). Counsel for the Debtor neither in the Motion for Stay filed in the Michigan Bankruptcy Court nor the same Motion filed in the District Court, contended that the Debtor was unable to post a supersedeas bond.

On November 10, 2003, the District Court granted a Motion for Stay Pending Appeal, provided that the Debtor post a cash bond in the amount of $2.8 million. The District Court later amended the original Order and clarified that the bond could be in cash or a surety bond. Rather than post the bond, on November 14, 2003, three days before the expiration of the 60-day period, the Debtor filed his Petition for Relief under Chapter 11 in this Court, immediately triggering the operation of the automatic stay imposed by Section 362 of the Bankruptcy Code and stopped any further collection attempts by JRH.

On January 16, 2004, JRH filed its Objection to the Debtor's Claim of Exemptions (Doc. No. 97). On March 5, 2004, JRH filed its Amended Motion for Summary Judgment on its Objections to the Debtor's Claim of Exemptions (Doc No. 186). On March 8, 2004, the Debtor filed his Motion to Avoid Judicial Lien of John Richards Homes Building Co., L.L.C. (Doc. 193). On March 15, 2004, the Debtor filed Debtor's Cross–Motion for Summary Judgment Regarding Objection to Exemptions Filed by John Richards Homes Building Co, L.L.C. (Doc. No. 212). While the issues raised by these Motions were from time to time perfunctorily discussed, the Motions were never formally heard with proper notice and ruled on prior to the scheduled confirmation hearing.

On June 30, 2004, this Court entered its Order Overruling Objection to Debtor's Disclosure Statement; Approving Disclosure Statement; and Setting Confirmation Hearing for August 18, 2004 (Doc. No. 313). On October 27, 2004, this Court entered its Order and denied confirmation of the Debtor's Fourth Amended Chapter 11 Plan, as modified, (Doc. 455) and scheduled a hearing for November 18, 2004, to consider a dismissal or conversion of the Chapter 11 case to a Chapter 7 liquidation case.

The Debtor on November 5, 2004, filed a Motion for Reconsideration of the Order Denying Confirmation; Motion for Permission to File and for the Court's Consideration of Second Plan Modification and Request for Hearing on November 18, 2004 (Doc. 461). On the same date, STN.Com, Inc. and Adell Broadcasting Corporation also filed their Motion for Reconsideration of Order on Confirmation of Fourth Amended Plan and Request for Hearing on November 18, 2004 (Doc No. 460).

On December 16, 2004, this Court entered its Order abating ruling on the Motion of STN. Com, Inc. and Adell Broadcasting for Reconsideration of Order on Confirmation of Fourth Amended Plan and Debtor's Motion for Reconsideration of Order Denying Confirmation; Motion for Permission to File and for the Court's Consideration of Second Plan Modification. The Court also scheduled a hearing for

January 5, 2005, to consider JRH's objection to the Debtor's claim of homestead exemption and the Debtor's Motion to Avoid Judicial Lien claimed by JRH based on the Sanction Order of the Michigan Bankruptcy Court.

On January 31, 2005, this Court entered its Order denying JRH's Amended Motion for Summary Judgment on its Objections to Debtor's Claim of Exemptions and granting the Debtor's Cross–Motion for Summary Judgment on JRH's Objection to Exemptions. This Court, in its Order, concluded that the Homestead Order entered by the Michigan Bankruptcy Court on September 17, 2003, was not binding in this case and that this Court was unwilling to accept the holding of the Michigan Bankruptcy Court that Section 303(i) trumps and preempts the homestead protection granted by Article X, Section 4 of the Florida Constitution to citizens of this State.

The Michigan Bankruptcy Court itself recognized the absolute right of a Debtor to claim exemptions by stating in its Order:

> "Plainly the Bankruptcy Code reflects a clear Congressional intent to permit the residents of a state who file for bankruptcy relief to take advantage of that state's exemptions, including, where appropriate, Florida's unlimited homestead exemption ... The difference here is that Adell has not filed for bankruptcy relief. Therefore, the exemptions that he would be permitted if he were to file bankruptcy are irrelevant."

*In re John Richards Homes Bldg. Co., L.L.C.*, 298 B.R. 591, 607 (Bankr.E.D.Mich. 2003).

The difference between the existing facts and the facts at the time the Michigan Bankruptcy Court rejected the claim should be quite evident. The Debtor's homestead exemption claim presented to this Court is in the context of an already pending bankruptcy case of the Debtor. Based on the evidence presented to this Court, this Court is satisfied that the Debtor complied with the residency requirements of Section 522(b)(2)(A), that he was a *bone fide* resident of Florida at the time he filed his Petition for relief under Chapter 11 in this Court, therefore, he is entitled to the homestead protection guaranteed by Article X, Section 4 of the Florida Constitution. Thus, the Naples residence of the Debtor is exempt and JRH cannot compel the same to be sold to satisfy the Judgment of the Michigan Bankruptcy Court based on the sanction award granted to JRH.

This left for consideration the present matter which involves the Debtor's Motion to Avoid Judicial Lien claimed by JRH to encumber the Debtor's residence located in Naples, Florida.

It is clear from this record that the facts relevant to the issue of the Debtor's ability to invalidate the Judicial Lien of JRH are without dispute and can be resolved as a matter of law.

In support of his Motion to Avoid Judicial Lien of JRH, pursuant to Section 522(f), the Debtor contends that the lien impairs his right to enjoy the full benefit of exemptions and, therefore, he is entitled to invalidate the same.

■ On January 5, 2005, this Court heard extensive arguments from counsel for JRH in opposition of the Debtor's Motion to Avoid Judicial Lien. In addition, this Court also heard oral argument by Debtor's counsel in support of Debtor's Motion to Avoid Judicial Lien. Based on the foregoing, this Court has considered the Motion, together with the record and now finds and concludes as follows.

Section 522(f)(1)(A) of the Bankruptcy Code provides in part:

**11 U.S.C. § 522. Exemption**

(f)(1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(A) *a judicial lien, . . .*

11 U.S.C. § 522(f)(1) (Emphasis supplied). For a debtor to avoid a lien under § 522(f)(1)(A), the debtor must establish the following: (1) that a judicial lien had been fixed on the subject property, (2) in which the debtor has an interest, (3) the judicial lien impairs the debtor's right to have full benefit of the exemption available to debtors under the applicable law. The only exception contained in the statute relates to judicial liens that secure a debt owed to the debtor's former spouse for support or maintenance. *In re Willoughby,* 212 B.R. 1011, 1014 (Bankr.M.D.Fla. 1997).

In order to perfect a judgment lien on the property of the judgment debtor, that debtor, under the laws of the State of Florida, must fully comply with the requirements of Chapter 55, Fla. Stat. 55.10

**CHAPTER 55. JUDGMENTS**

**55.10 Judgments, orders, and decrees; lien of all, generally; extension of liens; transfer of liens to other security**

(1) A judgment, order, or decree becomes a lien on real property in any county when a certified copy of it is recorded in the official records or judgment lien record of the county.

Fla. Stat. 55.10.

The record reveals that on May 29, 2003, JRH recorded in the Official Records of Collier County, Florida, the Sanction Order and a document entitled Certification of Judgment for Registration in Another District issued by the Michigan Bankruptcy Court on May 16, 2003. This Certification of Judgment for Registration in Another District is in the Official Records of Collier County, Florida and can be located in OR:3302 PG: 2835 and 3193623 OR:3302 PG:2859.

On July 3, 2003, JRH filed a Judgment Lien Certificate with the Secretary of State for the State of Florida, identifying Kevin Adell as the Judgment Debtor, with his mailing address of 636 14th Ave. South, Naples, Florida, 34102. The State of Florida recorded the Judgment Lien on July 3, 2003, (Lien Document J033000206245). Lastly, on August 29, 2003, JRH filed and placed into the public records of Collier County, Florida, an affidavit regarding the address of Kevin Adell, identifying him as the Debtor. It is without dispute that at least by August 29, 2003, JRH properly recorded its judgment and complied with the requirements of the State of Florida for the perfection of judgment liens.

### JUDICIAL LIEN

■ To be avoidable under Section 522(f)(1)(A) of the Bankruptcy Code, a lien must be a "judicial lien," other than a judicial lien that secures a debt to a former spouse for support or maintenance.

■ The term "judicial lien" is expressly defined in Section 101(36) of the Bankruptcy Code which provides:

**11 U.S.C. § 101. Definitions**

In this title—

(36) "judicial lien" means lien obtained by *judgment,* levy, sequestration, *or other legal or equitable process or proceeding.*

11 U.S.C. § 101(36) (Emphasis supplied). The Eleventh Circuit Court of Appeals has

discussed Section 101(36) in the context of a motion to avoid a judicial lien under Section 522(f)(1)(A). In *In re Washington,* 242 F.3d 1320, 1323 (11th Cir.2001), the Eleventh Circuit stated:

> Courts have described a judicial lien as "an interest which encumbers a specific piece of property granted to a judgment creditor who was previously free to attach any property of the debtor's to satisfy his interest but who did not have an interest in a specific piece of property before occurrence of some judicial action."

*In re Washington,* 242 F.3d at 1323 (quoting *In re Fischer,* 129 B.R. 285, 286 (Bankr.M.D.Fla.1991)) (quoting *In re Boyd,* 31 B.R. 591, 594 (D.Minn.1983)). In other words, "where liens do not arise automatically and solely by force of statute, but rather are obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding, such liens are deemed judicial lien." *In re Schick,* 308 B.R. 189, 192 (D.N.J.2004).

■ Further, it is clear from a plain reading of Section 101(36) that a lien does not have to be based on "judgment" to qualify as a "judicial lien" within the meaning of the statute. The definition is written in the disjunctive. Consequently, by definition, a judicial lien may arise by judgment, by lien, by sequestration, *or by other legal or equitable process or proceeding.* See *In re James,* 304 B.R. 131, 135 (Bankr.D.N.J.2004) ("Under the Bankruptcy Code a judicial lien can arise in *one of four ways:* (1) judgment, (2) levy, (3) sequestration, or (4) other legal or equitable process or proceeding.") (Emphasis supplied). See also *In re Monroe,* 282 B.R. 219, 223–24 (Bankr.D.Ariz.2002) (Turnover order was a judicial lien because it was obtained by legal proceedings). It cannot be gainsaid that based on the facts as outlined earlier, the lien of JRH was a judicial lien, thus, subject to the avoidance provisions of Section 522(f)(1) of the Bankruptcy Code.

## THE NATURE OF THE CLAIM

■ Finally, the nature of JRH's underlying claim or "right to payment" is irrelevant for purposes of avoiding the lien under Section 522(f). In a case of first impression, the Bankruptcy Court for the Middle District of Florida, in the case of *In re Allen,* 217 B.R. 945 (Bankr.M.D.Fla. 1998), dealt with this issue and determined that, "numerous courts have held that judicial liens may be avoided even though the debt underlying the lien may be excepted from the debtor's discharge." *Id.* at 948 (citations omitted). The Court in *Allen* agreeing with holdings of the cases concluded that, "the underlying nature of the debt which is secured by a judicial lien does not affect a debtor's right to avoid the lien." *Id.* at 949. Generally, therefore, courts will reject a creditor's contention that a debtor should not be allowed to avoid a lien because the underlying debt is non-dischargeable.

> Nor do the provisions permitting lien avoidance restrict the debtor's right to debts which are dischargeable. Creditors holding nondischargeable debts are not accorded any priority under the distributive scheme of the Bankruptcy Code. *See* 11 U.S.C. Section 726. It is only the character of their debt which is affected—it remains collectible after discharge.

*In re Hulvey,* 102 B.R. 703, 705 (Bankr. C.D.Ill.1988).

Thus, the fact that the Michigan Bankruptcy Court found that the Debtor's conduct was outrageous and so extreme that it warranted the imposition of punitive damages as part of the Sanctions Order is of no consequence and is irrelevant for the purpose of determining whether the judg-

ment lien claimed by JRH is avoidable as a judicial lien under § 522(f)(1)(A) of the Bankruptcy Code.

 The importance of determining the voidability of the judicial lien claimed by JRH is highlighted by the fact that the Fourth Amended Plan of Reorganization, as modified, provides that to establish feasibility the Debtor was willing to borrow funds against his homestead, at least in part, to fund his Plan of Reorganization. The fact of the matter is that the Debtor introduced into evidence at the Confirmation Hearing on August 18, 2004 (Debtor's Exhibit 1), a commitment letter issued by the First National Bank (the "Bank") to the Debtor. In its letter, the Bank approved the Debtor's request for a loan in the amount of $1,300,000.00 for the purpose of funding Exit Financing from the Chapter 11 bankruptcy. The letter stated that the loan would be secured by the first lien position and the commitment is dependant on confirmation of the Debtor's Plan of Reorganization.

It is clear and not subject to speculation that so long as the judgment lien claimed by JRH encumbers the Debtor's homestead, the bank will not be willing to lend funds to the Debtor and, thus, be junior to the judgment lien claimed by JRH. It should be evident from the foregoing that unless the Debtor is able to avoid the Judicial Lien of JRH encumbering his homestead, his constitutional right to fully enjoy the benefits of his homestead exemption is impaired, thus, avoidable under 522(f)(1)(A) of the Bankruptcy Code.

Accordingly, it is

ORDERED, ADJUDGED, AND DE-CREED that the Debtor's Motion to Avoid Judicial Lien (Doc. No. 193) be, and the same is hereby, granted. It is further,

ORDERED, ADJUDGED, AND DE-CREED that the Judicial Lien based on the Judgment entered by the Michigan Bankruptcy Court on April 25, 2003, be, and the same is hereby, avoided and no longer enforceable pursuant to Section 522(f)(1)(A) of the Bankruptcy Code.